### AUGUST BOUCHER *vs.* CUSHNOC PAPER COMPANY.

### Kennebec.   Opinion March 18, 1916.

*Assumption of Risk.      Duty of Master to Furnish Reasonably Safe and Suitable Place for Servants in which to Work.*

The plaintiff was injured in the wood room of the defendant's mill on the evening of December 11, 1912.   He was engaged at the time in carrying on his shoulder heavy logs of wood about four feet in length, from a small car outside the basement door to a saw situated in the basement.   While thus engaged he claims that the forward end of a log came in contact with an iron truss rod supporting a beam in the ceiling, and hanging above the path of his work, and that he was thrown upon the floor and injured.   The negligence complained of is the existence of this low truss, combined with the inadequate lighting of the room.

*Held:*

1.   That so far as the truss was concerned, it was a matter of mill construction and had existed for a long time.   The lowest point of the truss rod was five feet, ten and one-half inches above the floor.   If its maintenance could be deemed negligence on the part of the defendant, a question not free from doubt, the plaintiff had assumed the risk connected with it and cannot now be heard to complain of it.   The risk, if any, was open, visible and fully appreciated by the plaintiff, who from his prior service in the same room was entirely familiar with the construction.

2.   That as to the inadequate lighting the evidence weighs heavily against the plaintiff.

3. That if the plaintiff's contention as to darkness is not true, then the defendant cannot be charged with negligence, and the case fails. If his contention as to darkness is true, then his own want of due care is apparent, and the case likewise fails. For a man of mature years, in the full possession of his faculties, entirely familiar with the situation and surroundings, to attempt to transport logs of wood weighing about two hundred pounds each, on his shoulder, a distance of forty feet, over an uneven, wet and slippery floor, across a log chain and beneath a low lying beam, all this in darkness, must be regarded such contributory negligence on his part as precludes recovery.

Action on the case to recover damages for personal injuries sustained by plaintiff through the alleged negligence of the defendant company. Plea, general issue. Verdict for plaintiff. Motion for new trial filed by defendant. Motion sustained. New trial granted.

Case stated in opinion.

*Benedict F. Maher, and J. L. Boyle,* for plaintiff.

*Andrews & Nelson,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, KING, HALEY, HANSON, PHIL-BROOK, JJ.

CORNISH, J. The plaintiff, a man then twenty-eight years of age, was injured in the wood room of the defendant's mill on the evening of December 11, 1913. He was engaged at the time in carrying on his shoulder a heavy log of wood about four feet in length, from a small car outside the basement door to a saw situated in the basement. While thus engaged he claims that the forward end of the log came in contact with an iron truss rod supporting a beam in the ceiling and hanging above the path of his work, and that he was thrown upon the floor and injured. The negligence complained of is the existence of this low truss, combined with the inadequate lighting of the room; that is, the plaintiff contends that the defendant failed to use that due diligence in furnishing him a reasonably safe place in which to do his work which the law requires.

A word as to the premises. The wood room, in which this accident happened, was situated in the basement of the defendant's pulp and paper mill on the east bank of the Kennebec River in Augusta. The logs, wet from the river, were drawn into this room by an endless chain, transferred to live rolls and carried along to the saw, toward the inner end. Beyond the saw were the barkers. The

chain which drags in the logs crossed the floor at an angle between the door and the truss. About midway of the room and nineteen feet from the outer door a large wooden beam, strengthened by an iron truss, extended across the ceiling between two supporting posts, to strengthen the floor above. This beam was seven feet, and the lowest point of the truss rod five feet ten and one-half inches above the floor. The floor of that portion of the room where the logs came in was rough, uneven, wet and slippery either from water or ice. The room was lighted by means of electric lights suspended from the ceiling.

On the night of the accident no logs were being brought into the room but instead, four foot wood or short wood as it was called, was brought to the outer door on a car, and the plaintiff with a fellow worker named Dostie was engaged in transporting this short wood from the car to the saw. The usual method was to move the sticks along the floor by means of a pickaroon, but as there was no usable pickaroon available that night, these two men carried the short logs one at a time on their shoulder. We think the evidence fairly shows that the absence of proper tools was called to the foreman's attention and he directed them to do the best they could. The plaintiff was working extra time. He had worked during the day, returned at 7 P. M., commenced this work and was injured about 8.15, after he and his companion had unloaded two cords from the cars. This briefly states the general situation. Let us now consider the issues.

1. Negligence of the defendant.

The two points relied upon by the plaintiff are the low truss, and the darkness. So far as the truss is concerned, it was a matter of mill construction, and had existed many years, the evidence does not show how many. If its maintenance could be deemed negligence on the part of the defendant, a question not free from doubt, the plaintiff had assumed the risk connected with it and cannot now be heard to complain of it. He was perfectly familiar with the construction. He had worked for this defendant for two months immediately prior to the accident, and at a former period for seven months, and practically all of that time in this wood room, a part of the time rolling logs on to the carrier, and his work carried him back and forth beneath this truss. If it was a menace, the risk was

open and visible, and fully appreciated by Boucher. It remained unchanged and uncomplained of by this plaintiff during all the time that he was employed. This element of negligence cannot be considered. *Dempsey* v. *Sawyer,* 95 Maine, 295; *Babb* v. *Paper Co.,* 99 Maine, 298.

As to the inadequate lighting the evidence is overwhelmingly against the plaintiff. There were places for two or three lamps between the beam and the door, beside a lamp over the saw, beyond the beam, and others over the barkers and in the more distant parts of the room. The controversy was over the condition between the beam and the door. The plaintiff says that no light was burning there, that the nearest was the one over the saw and that where he worked it was dark. In this he is corroborated by Dostie, and to some extent by a workman in the adjoining grinder room.

On the other hand the foreman, the watchman, the sawyer, and the two men who worked on the barkers, emphatically state that two or three lights were burning between the beam and the door, and that that portion of the room was well lighted. It was of course the province of the jury to compare, weigh and pass upon the conflicting evidence, but when we consider the vital interest which the plaintiff has in the result of this litigation, and the want of interest on the part of the defendant's witnesses, many of whom are no longer in its employ, the improbability, if not impossibility, of two men working in that dark room, stepping over the log chain and going back and forth beneath this truss for over an hour, making seventy-five trips as they say, without meeting with any accident, and that want of lights was not given by them as the cause of the accident immediately after it occurred, we are forced to the belief that the sympathy of the jury outweighed their judgment.

After studying and analyzing the evidence with great care we are of the opinion that the room was adequately lighted, and that the injury was caused, not by the plaintiff's log hitting the truss, in the darkness, but by his tripping on the log chain and falling down, as the one eye witness, outside the plaintiff's companion, said he did. This was the man who brought the wood to the door in the car, and who was looking directly at the plaintiff at the time of the accident. He says that Boucher stepped on the log chain about eight or ten feet from the door and fell.

The record shows that both Boucher and Dostie gave the same account of the accident that evening after it happened, not mentioning truss or darkness but assigning it to slipping on the chain, a statement however which the plaintiff denies. The location of the log on the floor after the accident tends further to bear out the truth of this theory.

In view of all the facts and circumstances it is the opinion of the court that the verdict of the jury was palpably wrong on the question of the defendant's negligence. *Moulton* v. *Railway Co.,* 99 Maine, 508.

2. Contributory negligence.

It is unnecessary to dwell upon this point at length. If the plaintiff's contention as to darkness is not true, then the defendant cannot be charged with negligence and the case fails. If the plaintiff's contention as to darkness is true, then his own want of due care is apparent, and the case likewise fails. For a man of mature years, in the full possession of his faculties, entirely familiar with the situation and surroundings, to attempt to transport logs of wood weighing about two hundred pounds each, on his shoulder, a distance of forty feet, over an uneven, wet and slippery floor, across a log chain, and beneath a low-lying beam and truss, all this in darkness, fills full the measure of contributory negligence.

The plaintiff claims that he went into an adjoining room and procured two lamps, but they would not work, and after that he asked the foreman for lights and he promised to get some at the office. The foreman denies this and says that Boucher made no request, and that Dostie simply remarked that it was a little dark. But assuming Boucher's statement to be true, it does not relieve him from that measure of due care which as a reasonably prudent man he was bound to exercise. No lights were brought, and yet the plaintiff continued his perilous work for an hour. There was no obligation on his part to do so. It was purely voluntary. Its continuation led to what might have been naturally expected under those circumstances, an accident, and one towards which his own lack of reasonable prudence contributed.

Under the principles of law which have become firmly fixed, the entry must be,

*Motion sustained.*